May it please the Court, my name is Lawrence Mann. I represent Mr. Carpenter in this case. And I'd like to reserve five minutes if I may. Your Honors, this case involves two aspects. One is the failure of the administration to comply with its own regulation. And two, a due process issue. Let me deal with the easy one first. That's the due process issue. It took nine years from the time of Mr. Carpenter's first petition with the Federal Railroad Administration until the final decision by the Federal Railroad Administration to issue its decision. By any stretch of the imagination, I believe that a nine-year delay violates due process. Under the FRA's own regulations, it states that it shall provide a prompt determination of all material issues. Assuming you're right that there's a due process violation, is there any remedy here for it? Well, there's remedial relief. That's a separate issue as to what kind of remedy. But in this kind of a situation where there's not a timely hearing and the lateness is so long that it violates due process, what's the remedy? To have Mr. Carpenter have the opportunity to have him to go through the certification process again. Well, that's a different issue. We're going to consider that anyway, right? That's the other point you raised. Yes, it is, Your Honor. My point is there's no independent or separate remedy for the supposed due process violation, is there? No, that's correct. There is not. What's the point of raising it then? Well, equitable powers of the court, I would hope, would enter into this and direct the Federal Railroad Administration to require another examination on behalf of Mr. Carpenter. The court certainly has the equitable powers to do that or, at the very worst, remand it back for a prompt consideration of the material issues. So what are you saying? Even if we conclude on the other issue that the certification was properly denied, right, and properly affirmed by the agency, we should still send it back under the due process violation? You wouldn't have to even reach that issue. That issue is what issue? The issue of proper denial or improper denial. You mean we just assume? Due process was denied. At this point, he's nearing retirement. He doesn't even have a chance, as a practical matter, if it takes another three, four, whatever years, to have a final decision by the agency. Now, if I may direct my argument to the substantive issue of whether or not the Federal Railroad Administration violated its own regulation. The regulation on its face is very clear that the administrative hearing officer, he must provide for a prompt and fair determination of all material issues and controversy, and that a de novo hearing to find the relevant facts and determine the correct application of this part to those facts. Now, the FRA is saying, well, because he can't, he meaning the administrative hearing officer, can't give the relief that we requested, we requested that there be a new opportunity for him to apply for the certification. The FRA's position is that... What does that mean? You mean just to take the test over again? Yes, and be trained prior to taking that test. Because the railroad failed in... So you think the FRA has the authority to order, like, retraining? Is that what you're saying? The FRA, well, there are two aspects. One is they admit they have remedial powers, and, in fact, they've exercised remedial powers. What, for instance? What have they done? Well, at the very beginning of this case, they exercised a limited remedial power in that they allowed the railroad to correct a violation of the regulation, in that it did not give him the opportunity of knowing what he failed to comply with. But what they told the railroad is, well, you've got to tell them the reason why he failed, right? That was one of the remedial rights. That's correct. But that's a different kind of power, if you want to call it remedial. Well, you have to give them retraining, isn't it? It depends on where the limit is on remedial training. Well, do you have any other instances where they have exercised the remedies that you're asking for? Oh, well, Your Honor, in the regulation itself, it requests the petitioner, meaning Mr. Carpenter here, to explain the nature of the remedial action sought. So if they can't grant remedial action, why do they ask for it? They don't say anywhere in the regulation that there is any limit. Even in their notice of ---- Well, I guess what I'm asking you, do you have any instances where they've interpreted that to mean what you're asking it? I don't know if they've had any other case like this. I don't know the history because these are not public records. They're not precedential, and we don't get the benefit of knowing what those cases are. But in their notice, they state, in the appeal process state, That's in the excerpt from the record at page 17. Now, even assuming that they could not grant any remedial relief, they still ---- they, the administrative hearing officer, still under the regulations, must make a fair determination of all the material issues. Here, he failed to do that. And the reason for that is Mr. Carpenter and they agreed ---- Well, but I think that there was some sort of joint statement here in terms of what the lawyers were requesting. Now, are you requesting something that the lawyers never requested at the time? I am not, Your Honor. I think I should point that out. Because, obviously, if it's the first ---- if you're coming up here the first time in appeal and asking for something that the lawyers never asked ---- No, that is not the fact. February 5, 2002, at the request of the hearing officer, all parties jointly filed a statement of issues for trial. That's at ER 96. Then, for pretrial, the administrative hearing officer said, submit some issues that should be addressed at pretrial. And we submitted these at March 26. And that's at ER 101-102. Okay. When you're going through this, tell me what it is that you requested, what it is that the court didn't do, and did you follow up and ask the court to make that specific finding? Because, obviously, you can get nailed at the other end. If you request the court to do it, the court doesn't do it, and then you don't follow up and ask the court to do it. At the initial joint statement of issues for trial, I set out five or six issues. At the statement of issues for pretrial, the hearing officer conducted a pretrial conference. And he said, I want briefing on three of those issues only. He did not include the issues which I had raised, whether or not the FRA, I mean, whether or not the carrier failed to comply with the regulations. And I cited some various regulations that we allege the carrier violated in the program, and then whether or not he failed the simulator testing, and whether or not he was afforded adequate training. These are the three issues he did not reach. Okay. Did you object? Sure. Well, I filed the appeal. Now, did you object there and say, I asked you to rule on this and rule on it? No. Your Honor, he asked for briefing on three separate issues about his powers. He did not ask anything about what we preserve, what I preserve, or issues for the trial. This was in the pretrial stage. And at the pretrial stage, it's like what we're going to limit, what issues are we going to be limited to. Okay. So just so I understand your position correctly, that you're saying that by putting that in the pretrial statement and doing nothing more, you've preserved it. Is that correct? In the pretrial statement, it was at the request of the hearing officer. He said that he wanted briefings on three issues. And the three issues were, did he have authority to conduct and did he have authority to require retraining and to grant the relief. But even if, even if he had no authority whatsoever, assuming that for the moment, the administration admits, the Federal Railroad Administration admits that our remedy is through the Railway Labor Act. And if he had only made findings of fact, as we requested in our statement of issues for trial, we could then pursue the case before a board, the Railway Labor, under the Railway Labor Act. The government concedes that. So it doesn't matter, as a practical matter, whether or not the AHO had authority to grant the specific relief or not. That doesn't conclude his obligations. Under the specific regulation, he had to determine all the material facts. And they admit that he did not reach those. There's no issue there. He just ignored it because he said, I can't grant you the relief that you want. But that doesn't end it because of the Railway Labor Act relief that we could get. And the FRA even says that in the Railway Labor Act context, that the findings of fact of the FRA are dispositive. But we didn't have that opportunity. I'd like to reserve back the rest of the time. Okay. Thank you. Do you know what sort of adjustment would you like here on the mic? Okay. Good. Oh, good. Well, I love that preplanning. I think that should be good. Can you hear me okay? Can you speak up a little? Yes. Is that better? Good morning. May it please the Court. My name is Colleen Brennan. I'm an attorney with the Federal Railroad Administration. With me at Council table this morning is Peter Plotky from the Department of Transportation General Counsel's Office. I'll begin with a couple of the issues that seemed to generate questions when Mr. Mann was speaking. First about the remedial action that FRA can take in its review of engineer certification decision. The remedial action that can be taken is a finding that the certification decision was improper. That's the only remedial action. And in the references that Mr. Mann makes in the record to the fact that we can take remedial action that we refer to, that would be the finding that we have. The remedy is under the Railway Act? Under the Railway Labor Act, if in a case in which the agency had found that a certification decision was improper, an engineer who had that finding made for him would then be able to use that to get other remedies from the railroad, such as back pay or some other type of decision or remedy. But the only thing that the agency can determine is whether or not the certification decision was proper. Okay. Now, those findings of fact were not made in this instance that would allow him to have gone on to the Railway Act? Right. Well, the finding was that the certification decision was affirmed, that the certification decision was proper. Okay. Are there any – I think that Appellant's Counsel, what I'm understanding him to say, is he requested some additional findings that were not made, and what I was trying to address is whether – was there a waiver issue there or what? He had some concerns regarding the training program and Mr. Carpenter's experiences in that training program, and there were some allegations about that. But the Administrative Hearing Officer viewed that, and FRA has always viewed that, as beyond the scope of the review of the certification decision, which is limited to determining whether the decision was proper. If, in fact, the prospective engineer did not have the skills to become certified, did not pass the tests, et cetera, then it was proper to deny certification, and the agency does not get into the other aspects of the railroad's employment of that individual and any rights for them to be or not be in the training program, et cetera. Ms. Brimden, I gather from the record there's no allegation that Mr. Carpenter was treated any differently from anybody else who is trained. His training was the same as anybody else's training, and his opportunity to examine was the same as presented to anyone else. Now, is that what the record shows? As far as we know, I mean, he may believe otherwise, but it seemed that his concerns were with the training program generally and I guess how it worked out for him specifically, but not necessarily an allegation that he was treated differently than other people who were in the training class with him. Your position today seems to be different from the position you took when you stipulated to these different issues as being properly before the hearing officer in your joint statement of issues for trial and for pretrial, right? Well, we listed the issues, definitely the issues that each of the parties wanted to have considered. We had not yet at that time briefed any of those issues to fully have the hearing officer decide the scope of his authority. So we had the statement of issues for trial, and then the hearing officer issued a letter to the parties, which is in the record at page 99, in which he asked that each counsel look hard, think hard, and to propose all issues, including evidentiary issues, that needed to be considered. And at that time, the resulting list of issues were the ones on which he ultimately ruled and found that the only factual issues that were before him as a result of that were those related to issues in the training program, which he found he did not have the authority to address. Somewhere in the regulations, I forgot where, but Mr. Mann referred to it. It directs, I guess, the petitioner to state what remedies he seeks in this process, right? And if the only thing you can get is a ruling on whether or not the certification is proper, what is the purpose for asking the petitioner what remedies he seeks? I guess the petitioner can certainly state what other remedies they are interested in in receiving, but the only remedy that the hearing officer can actually give is the statement that the certification decision is improper, if in fact that is the fact. Are you aware of any other cases where the agency has interpreted this differently, that there are other remedies? No. Well, is there any case law in this at all as to what the scope of the authority of the FRA is in its remedial powers? No, Your Honor. This is the first case to come to federal court outside the administrative process. But this has been the agency's consistent position, which the agency believes is consistent with the statutory mandate that it had. The statute that resulted in these regulations arose out of an accident in which Congress was concerned after that that we had no means of making sure that qualified persons were operating locomotives. And so as a result, that was really the agency's focus, was simply to make sure that people who do get certified are actually qualified and that those certification decisions are properly made. And that is what the agency has focused on and made clear in the preamble to the regulation as well, that that was the focus, that the agency didn't intend to get involved in the employment relationship of the railroad with its employees, to alter seniority rosters, or to do anything else that would affect that employment relationship. Did you just say that one of the proper issues to raise is whether or not the people who do the certifying are properly qualified? No, no. If I did say that, Your Honor, I didn't intend to. What I meant to say is that the people who are certified are qualified to be certified, that they meet the requirements for certification under the regulation. Give me a thumbnail sketch of why you obviously think that the judgment should be affirmed. Tell me why on each of the legal issues. Give me your best argument on each of those. Well, there is no evidence in the record that shows that Mr. Carpenter actually was qualified to be certified. The only evidence in the record are his simulator scores that show, in fact, that he did not meet the requirements for certification. Therefore, the certification decision was proper, and it was proper for the agency to conclude that that was a proper decision. And in terms of the scope of that review, again, that's been the agency's consistent position, consistent with the statute and with the regulation when promulgated, and that the remedy is also consistent with that. And that remedy would be, if appropriate, a determination that the certification decision was improper. However, in this case, there was no evidence to find that Mr. Carpenter was, in fact, qualified for certification. Now, he also, Mr. Carpenter also raises due process claims. Do you want to respond to that? Sure. First of all, the agency's procedure has not affected a property right or a due process right that he actually has. In terms of a liberty interest in due process, the agency has not harmed his integrity or his honor in any way, simply by finding he did not meet the qualifications. Well, I think part of it was this didn't exactly proceed with lightning speed. So I think from that standpoint, obviously, some of the delay was due to the agency's part. Some appears to have been due to Mr. Carpenter. So do you want to respond to that? Sure. A large part of the delay actually was consumed in the discovery process. Mr. Carpenter requested significant, substantial discovery from the railroad. FRA was really not a part of that process in that no one asked for any discovery from the agency, nor did the agency ask for any discovery from anyone. So much of that time was consumed by the railroad and Mr. Carpenter trying to proceed through the discovery process. When there ultimately was a dispute that was brought to the hearing officer's attention, he did act within the scope of the authority to resolve that by ordering the railroad to produce the information that Mr. Carpenter was requesting. Is it ordinary before the FRA for the proceedings to take this long? Well, they vary just depending on a wide variety of factors. Here, as I said, there are other cases that take 9 or 10 years. Are there lots of cases that take 9 or 10 years? Almost every case takes 9 or 10 years. What takes so long? No, I would say that most of them don't. Most of them do not also have the extensive discovery that this case did. That certainly was one factor. Just another point to mention in terms of the time, however, as I think you got into a little bit with Mr. Mann, there was an initial decision by the Locomotive Engineer Review Board, which required the railroad to provide information to Mr. Carpenter on the reasons that they said he failed his test. That, as far as the agency was concerned, was a final decision on that particular petition. There was nothing else before the agency at that time until he again came back to the board. So to say that the time period began with his initial filing would not really be a correct calculation of the time. I mean, there's certainly no getting around the fact that this did take a long time, but our position is that it wasn't 9 years. Is it your position that the Administrative Hearing Officer did make a finding, a determination as to whether or not, I guess on what you contend is the only question that's properly before the agency, whether or not this petitioner should have been certified? Can you point me to the record where the Hearing Officer makes that finding one way or the other? Well, he dismissed the petition on the basis that none of the issues before him were issues on which he could rule or could make an issue. But he is supposed to make a determination on whether or not the petitioner is qualified to be certified, right? But that issue was not, there was nothing raised before him in that statement which directed him to any evidence related to that or to that question. What does that mean? Does that mean either the petitioner conceded that he wasn't qualified or the agency conceded that he was qualified or what? Well, since that issue was not raised in the statement before the Hearing Officer, that would indicate that that was an issue. So it's your position that that issue was not raised in this entire proceeding when the only thing, according to the agency, the only reason for this entire structure and this process to be in place is to determine whether or not a person is properly certified, right? Yes. And then you're saying that in this entire proceeding that question was never raised and never decided and that's a proper resolution after nine years? That doesn't make sense, does it? Well, if there were no issues before the agency that could be ruled upon, then the finding was that there was no evidence. Why does it take nine years to discover there's no issue to be ruled on? Again, because depending what the discovery process might have been about, and again, FRA was not particularly involved in requesting or receiving discovery, but had there been discovery on some issue that would have led to a conclusion that in fact the certification decision was not proper, that in fact the test had been passed or something of that nature, and that's just a hypothetical because that didn't happen here. But if something like that had happened, then that evidence would be presented and the hearing officer might have made a determination that the certification decision was improper. Ms. Brennan, we have to review the record and we have to make certain conclusions. And what – and you can tell me whether I'm wrong, but he's coming to rebut and he needs to know what he's got to rebut. So this record shows that the exam was taken, that it was repeated, that he took it a second time, and that he failed both times. Isn't that what the record shows affirmatively? Yes, sir. He then appealed. He said he raised questions about training and he raised questions about whether he should have an opportunity to be retested. The fact that he failed twice was, in somebody's opinion, the fact that he is not qualified to drive the train. Isn't that what the record shows? Yes, sir. All right. So when you answer the judge's questions, you've got to answer them. I know you're answering them as a lawyer, but you've also got to answer them as a practical matter. He flunked twice. Yes. And therefore he is not qualified to be an engineer. That's the conclusion to be drawn from the two failures. Yes, sir. Isn't that the position? Yes, sir. All right. But that's a conclusion only if the certification was properly denied, right? Well, the certification is properly denied if he has failed his tests. The only way we can – Well, and the function of the agency in this process is to determine whether or not the certification was properly denied, right? Yes. And you never did that because you say it wasn't raised. Well, that's – there was no evidence. That issue was not before the hearing officer at the time that he made his determination. He asked for all of the issues to be raised, and there was no issue raised saying, well, I think that he thought that he actually passed or anything like that. See, you're drawing the conclusion, though, and the judge is asking you because he wants to know how the conclusion can be drawn. The conclusion that you draw was based on his failure. Yes. And there's nothing in the record other than his failure to show whether he was qualified or was not qualified. Is that so? Yes. Apparently, there are no further questions. If you've completed your comments, did you have anything else you wanted to say? If I could, just to simply address, you did ask – you were asking about that, the issue of whether the issue had been preserved as to whether he had passed the certification or the questions about the simulator that were raised that were not mentioned in that – the pretrial statement that – which ultimately resulted in the ruling in this case. And as I pointed out at page 99, the request from the hearing officer was to address all issues, including evidentiary issues, and that that was not listed. But I would also just point out that, in addition to that, Mr. Carpenter had another level of appeal before the agency after the hearing officer's review. And if his concern had really been that, in fact, he really believed he had passed the test and met the qualifications for certification, that should have been raised in his petition to the administrator. While in the petition to the administrator he certainly contends that he did not receive a proper de novo review from the hearing officer, it only addresses the issues and the alleged inadequacies of the training program and does not specifically refer to any concerns about the simulator testing or the fact that he believed he had, in fact, met the requirement for certification. Thank you. Thank you. Thank you. First, Your Honors, as to the time delay, extensive discovery, there were only six depositions taken over a period of four days over – during a nine-year lapse. And – Mr. Mann, you can argue it if you'd like, but the record is pretty clear on what happened and why there was a delay. You ask questions, and you ask a whole lot of them. You ask many more than I normally ask if we withdraw an inference. They delayed in answering your questions, and they delayed so long. But the record shows how long they delayed, doesn't it? And it violates a federal statute as well as their regulation, which I cited in the brief. But as – Your Honor, Judge Ferris, you asked whether or not he failed the test. Twice. Twice. Yes. The answer that I have to you is no. The evidence will show, if we have the opportunity to show it to the hearing officer, why he did not fail that simulator test. And that's not in the – that's – there was no finding of fact. What in this record raised that question? Oh, the depositions, which were submitted to the administrative hearing officer, and the parties stipulated that the depositions could be part of the evidence in this case. That's where it is. And in the testimony of the plaintiff of how the procedure worked. And I identified the specific regulations that the railroad failed to comply with. So is it your view that Mr. Thompson was treated differently than everybody else who takes the test? What issue – Mr. Mann, what issue under the stipulation of issues for trial does that evidence come under? What deposition evidence? We stipulated, Your Honor, in the pretrial. All right. What did you do? Let's see if I have this reference. I'm sure I do. Somewhere here. ER 96 through 98, Your Honor. And in there it says the case can be decided on the briefs. But as part of that, at the pretrial, the parties agreed that the depositions could be admitted. No, no, no. I'm not talking about whether the depositions can be admitted. What issue to be decided by the administrative hearing officer does that evidence go to? Oh, whether or not Mr. Carpenter failed the simulator testing. And whether or not the carrier complied with several regulations that deal with the training program, training dealing with the simulator itself. He passed the operations part of the test. In the view of the railroad, he failed by three-tenths of a percent. I know that. My question is where is that stated in the issues for trial? Show me. Which issue is it? Statement of issues for trial is at ER 96. ER what? ER 96. And which issue is it? Issue number what? Number two, three, and four. And did the administrative hearing officer decide those issues? No, he did not. Whether the petitioner failed the simulator testing? He did not. And the government concedes that he did not in their brief. Well, now the government says that you never raised the issue of whether or not the denial of the certification was proper. And so that's the reason the hearing officer never addressed it. Is that right? In fact, you heard what she's saying. And what she's saying is, and I think she missed, with all due respect to Ms. Brennan, she misstated what the issue was in number two because in her brief on page 37, she quoted the joint statement of issues for trial. She said, well, the railroad failed to comply with the applicable regulations regarding training and testing. She did not include the word petitioners. We are alleging that the training and the regulations as it was applicable to the petitioner was violated here. Maybe my impression is not correct, so you correct me. This man passed everything, but he drove the train too fast. First time he drove it too fast, plop. Second time he drove it too fast, plop. And that's the state of this case, isn't it? Well, the issue was the quality of the simulation itself. There were problems with, and that's in the record, the simulator. Did he drive too fast so far as these tests were concerned? Is that his problem the first time that he drove the train too fast? As far as, yes, as far as the two pages that you have in the record of the simulator test by the railroad. But that doesn't get into whether or not, in fact, he failed the simulation. Because the underlying facts of how the… But you're suggesting that he didn't drive the train too fast. Well, he may not have, based upon the facts of the case, and interpret that there's some… So he took it the second time, didn't he? Yes, without… And when he took it the second time… Yeah, without training. And when he took it the second time, so far as this record shows, he drove it too fast again. Correct. All right. Again, they did not… Are you suggesting that that's not enough, or that that's not a fact? That the fact that they say that the simulator shows he drove it too fast is not proof that he did, in fact, drive it too fast? That's the railroad's position, and there was no factor… No, I want to know what your position is. Oh, my position is that he did not fail the simulator testing. He can make some errors. That doesn't fail the testing. He has to score 90 percent or better. He scored 89.7. And what I'm suggesting to the court is the AHO did not make a finding of fact as to whether or not the simulator testing was accurate or not. There was no finding anywhere. It's just in the record… When you say accurate, you mean that the 89.7 was correctly computed, or you mean that the simulator software correctly simulates actual conditions, or what do you mean by that? Well, there's certain problems with the whole procedure itself, whether or not it was working properly. There's evidence in the record that the simulator machine itself was not operating properly. So that it would produce an inaccurate score? Correct. You know the difficulty, though? It's just a third of the court. The difficulty is, was it the same simulator they used when they tested everybody else, and was it just as much off each time, and if not, did you raise that in this record? And their answer is no, you didn't. Did you? In the record? Yes. In the record itself, I haven't had the opportunity. No, but I mean in your depositions, is there anything in the record to show that Mr. Carpenter was treated any way other than as every other person who took the test? Oh, yes. I submit to the court there is, and if we have the opportunity, we'll be able to establish that. And what you are saying, at least what I'm hearing when you say that, is he didn't score less than 90. He scored more than 90, and they've twisted this thing around to make it appear that he scored less than 90. Is that what you're saying? I'm saying the railroad found that he scored 89.7. All right. I'm saying the procedures used and the simulator itself had problems, and we need to establish that, have the opportunity to establish, and we weren't given that right. I see.
judges: Farris, Tashima, Callahan